FILED
SUPERIOR COURT
OF GUAM

2018 MAR 30 AM 11: 48

CLERK OF COURT

BY: _____

# IN THE SUPERIOR COURT OF GUAM

| STACEY YVETTE KRISEL,<br><br>Plaintiff,<br><br>vs.<br><br>CLIFTON DEMOND KRISEL,<br><br>Defendant. | DOMESTIC CASE NO. DM0480-15<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |
|---|---|

## INTRODUCTION

This matter is before the Honorable Vernon P. Perez on Defendant Clifton Demond Krisel's Motion of Modification of Child Support and Alimony, filed June 7, 2017. Attorney Curtis C. Van de veld represents Defendant Clifton Demond Krisel ("Defendant") and Attorney Michael Berman represents Plaintiff Stacey Yvette Krisel ("Plaintiff"). Having reviewed the pleadings, the arguments presented, evidence received by the Court,[1] and applicable law, the Court now issues the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

By a preponderance of evidence, the Court makes the following findings of fact:

---

[1] On August 31, 2017 and November 3, 2017, the Court heard sworn testimony from both Plaintiff and Defendant. On August 31, 2017, Plaintiff was present in Court, and on November 3, 2017, Plaintiff participated via skype and telephonic communication. Defendant was present at both hearings. At the conclusion of the November 3, 2017 hearing, the Court gave the parties leave to file supplemental declarations and to file proposed findings of fact and conclusions of law. On November 22, 2017, Plaintiff filed a Declaration and on November 30, 2017, Defendant filed a Declaration.

---

*Krisel v. Krisel*
Case No. DM0480-15
Findings of Fact and Conclusions of Law



1. Plaintiff and Defendant were married for ten years prior to their separation in September 2015.

2. During their marriage, Plaintiff and Defendant had two children: S.G.K. (DOB: 03/08/2006) and N.A.K. (DOB: 06/18/2009).

3. On September 29, 2015, Plaintiff filed a Complaint for Divorce ("Complaint") based on irreconcilable differences. The Complaint was resolved through a Marital Settlement Agreement, the terms of which were attached and fully incorporated into the Interlocutory Judgment of Divorce. *See* Interlocutory Judgment of Divorce, Nov. 18, 2015.

4. On November 18, 2015, the Final Divorce Decree was entered, and the parties' marriage was dissolved.

5. Pursuant to the Settlement Agreement, Plaintiff and Defendant agreed to share joint legal custody of the two minor children, and Plaintiff would have primary physical custody, with Defendant having reasonable visitation rights. *See* Interlocutory Judgment of Divorce, Attachment (Marital Settlement Agreement at 8), Nov. 18, 2015. The Settlement Agreement also provided that Defendant would pay Plaintiff child support and spousal support as follows:

**13. CHILD SUPPORT:**
a) The Husband agrees to provide child support to the Wife in the amount of One Thousand Three Hundred Thirty Two and 50/100 Dollars ($1,332.50) per child, per month, deducted by the Defense Finance Accounting Services (DFAS) through wage assignment. Child support, which shall continue till both minors turn the age of 18.

b) Husband agrees to make necessary arrangements for the two minor children to receive and maintain all military benefits due to them as military dependents, including, but not limited to, military ID cards, and renewals of the ID cards, medical access to military hospitals, and exchange and commissary privileges. Husband agrees to cooperate in assisting Wife to obtain a Letter of Agency allowing her to transport the two minor children onto military bases.

. . .

**15. SPOUSAL SUPPORT:** Commencing on the first of the month following entry of the Final Divorce Decree, Husband shall pay Wife spousal support in the amount of Two Thousand Dollars ($2,000.00) per month, for a total of sixty (60) consecutive months, deducted by the Defense Finance Accounting Services (DFAS) through wage assignment. This provision for payments of spousal support is intended to be a contractual and non-modifiable obligation, both to duration and as to the amount. The obligation shall not be subject to modification by any order or judgment of any court, and neither party shall request modification at any time under any circumstances to any court.

*Id.* at 8-9.

6. Thus, in accordance with the Settlement Agreement, Defendant was to pay $2,665.00 in child support and $2,000 in spousal support each month, totaling $4,665.00.

7. The Settlement Agreement also provided that the community debts were to be divided between the parties. Plaintiff assumed responsibility for a $5,000 Bank of America Credit Card debt, $200.00 Chase Credit Card debt, and any other debts listed solely in her name. *Id.* at 8. Defendant assumed responsibility for a $16,000 Navy Federal Credit Union Visa Card debt, $17,000 car loan with Navy Federal, and all debts currently listed solely in his name. *Id.* at 7-8.

8. On February 22, 2017, the Court received from Plaintiff a Declaration and request for Order to Show Cause.[2] In the declaration and request, counsel for Plaintiff asserts that Defendant "failed to pay monies owed for spousal support under paragraph 15 of the Marital Settlement Agreement." (Decl. and Request for OSC, Mar. 9, 2017).

9. On March 17, 2017, the Court held an Order to Show Cause hearing, at which Defendant appeared and informed the Court that he was planning on hiring an attorney to assist him in this matter. Defendant indicated to the Court that he could no longer afford to make payments under the Settlement Agreement. Defendant

---

[2] The document was subsequently filed on March 9, 2017, upon the Court's calendaring of an Order to Show Cause on March 17, 2017.

*Krisel v. Krisel*
Case No. DM0480-15
Findings of Fact and Conclusions of Law

agreed to pay two hundred dollars per month in spousal support while this matter was pending. There was no indication that Defendant was not paying child support as agreed to in the Settlement Agreement.

10. On June 7, 2017, Defendant filed a Motion for Modification of Child Support and Alimony.

11. On July 5, 2017, Plaintiff filed her Opposition to the Motion of Modification of Child Support and Alimony.

12. On July 18, 2017, Defendant filed his Reply.

13. Plaintiff currently lives in Florida with the two minor children, and is unemployed. Plaintiff testified that she intends on pursuing a college degree.

14. Defendant lives on Guam and is employed by the United States Air Force.

15. During the marriage, Defendant was the primary income earner in the family.

16. Defendant began paying spousal support in January 2016 and stopped paying spousal support in December 2016. Defendant admitted he stopped paying spousal support without requesting modification from the Court. Defendant testified that he stopped paying spousal support because he could no longer afford to, and that Plaintiff failed to use the payments for the reasons that it was agreed upon.

17. The parties dispute what the spousal support was to be used for.

18. Plaintiff testified that the spousal support was to provide her with financial resources to relocate from Guam to the states with the two minor children, including housing, schooling, and for her to be able to find a job and go back to school, but was ultimately to be spent at her discretion. Additionally, Plaintiff testified that she had told Defendant that she would not be applying to any schools for at least one year to adjust to the relocation.

19. Defendant testified that the spousal support was to be used by Plaintiff to go back to school, and that she has not used it for that purpose.

20. Defendant began paying child support in January 2016 and continues to pay child support.

21. Defendant testified that when he and Plaintiff entered into the Settlement Agreement, he was still receiving dependent pay because they were still married.

22. Plaintiff testified that the Marital Settlement Agreement was drafted by her counsel at that time, and that Defendant did not have counsel.

23. Plaintiff testified that during their marriage, Defendant committed acts of adultery. Defendant refused to answer any questions regarding acts of adultery.

24. Plaintiff testified that she and Defendant agreed on the terms of the Settlement Agreement and that their divorce would be on the grounds of irreconcilable differences because of the negative affect a divorce based on the ground of adultery would have on his military career.

25. Both parties testified that the parties calculated the child support amount by going through the Guam child support guidelines. Neither party presented a copy of the worksheet used to calculate child support pursuant to the guidelines. According to Defendant, Plaintiff had that document in her possession.

26. The parties dispute whether the child care calculation had a typographical error in the Settlement Agreement.

27. The child support amount includes tuition for the minor children's private school, Heritage Christian Academy.

28. Plaintiff's monthly expenses in October 2017 were:

|   |   |   |
|---|---|---|
| a. | Mortgage | $1,273.00 |
| b. | Heritage Christian Academy (girls school)[3] | $945.00 (tuition) $21.00 (lunch) $33.00 (field trips) |
| c. | Water Utilities | $121.03 |
| d. | Electric Utilities | $177.80 |
| e. | Car Loan | $678.36 |

---

[3] The Court notes that this expense, according to the testimony given by Plaintiff, would be covered under the child support provision of the Settlement Agreement.

|   |                              |            |
|---|------------------------------|------------|
| f. | Car Insurance               | $125.67    |
| g. | Health Insurance (self)     | $209.28    |
| h. | Bank of America Credit Card | $115.00    |
| i. | Chase Credit Card           | $95.00     |
| j. | Gymnastics (girls)          | $129.00    |
| k. | Cable/Internet/Phone        | $120.89    |
| l. | Grocery                     | $600.00    |
| m. | Gas                         | $150.00    |
| n. | Navy Federal Credit Card    | $95.00     |
|   | **Total:**                   | $4,888.04  |

(Decl. of Stacy Yvette Krisel, Ex. B, Nov. 22, 2017).

29. When the parties were married, they lived in a two story four bedroom house with a monthly rental allowance of $2,600. The lease for this home terminated in March 2016.

30. Defendant currently lives in a smaller two story four bedroom house with a reduced rental allowance of $2,205.

31. As an active duty member of the armed forces, Defendant receives two types of income: base pay and entitlements. In 2017, Defendant received $4,566.60 in base pay, $368.29 in BAS, $3,124 in BAH, and $660 in COLA. *See* Decl. of Clifton Demond Krisel, Jul. 13, 2017, Ex.; Second Decl. of Clifton Demond Krisel, Nov. 30, 2017. Defendant is paid twice a month, mid-month pay and end of the month pay. Defendant is paid, on average, $4,000.00 each pay period, totaling $8,000 per month, inclusive of all entitlements (Base Pay, COLA, BAS, and BAH).[4] Defendant is also given a clothing allowance once a year.

---

[4] Defendant submitted pay statements for April, May, and June 2017. The mid-month-pay totaled 4,032.84 each month, however, the end of month pay fluctuated from $4,032.31 to $4,382.79. Defendant's pay statement for June however also includes a clothing allotment that was not included in April or May.

32. There are certain amounts that Defendant receives from the military that are dedicated funds for which must be spent on a particular purpose, and cannot be spent on an alternate purpose without constituting fraud on the military. Defendant testified that the $368.29 in BAS is to be used for food for the military member per month; the $3,124 in BAH is to be used for housing and utilities; and that the $660 in COLA is a cost of living adjustment given to the military member and his/her dependents.

33. Defendant testified that he can only spend his base pay and COLA in any manner he chooses. Defendant's base pay and COLA together amount to $5,226 per month.

34. Defendant acknowledged that he received an increase in his base pay salary of $200.00 from the time the Settlement Agreement was signed, but that it was offset by a COLA reduction of $200.00.

35. Defendant's monthly expenses approximately include:

   a. Food            $900.00
   b. Housing         $2,205.00
   c. Groceries       $370.00
   d. Internet        $75.00
   e. Phone           $90.00
   f. Utilities       $305.65
   g. Laundry         $40.00
   h. Pets            $45.00 to $175.00
   i. Auto Loan       $358.98
   j. Loan            $469.20[5]
   k. Auto Insurance  $71.12

---

[5] Payments for this loan began in January 2017. Defendant testified that it was to help pay his obligations to his former spouse. No further testimony or additional documentation was provided to indicate the total amount of the loan and how many payments he will need to make on the loan. It was also not clear to the Court whether the loan was received prior to January 2017 and Defendant only began making payments in January 2017, or if the loan was received in January 2017.

l. Transportation $200.00

m. Dental Insurance $34.68

n. Child Support $2,665.00

o. Spousal Support $200.00[6]

Total: $8,159.63[7]

(Decl. of Clifton Demon Krisel, Ex. 1, Jul. 13, 2017).

36. If the Court subtracts Defendant's housing and utilities as it is covered under his military entitlements, the total becomes $5,648.98.

37. Out of this amount, Defendant spends a total of $1,270 per month on food and groceries. Defendant's military entitlements provide for $368.29 a month in food. Defendant spends $901.71 over that amount on food/groceries per month.

38. Defendant testified that his pay and entitlements may change if he is reassigned to another location.

39. Defendant denied that there were any negotiations in the drafting of the Settlement Agreement. Defendant acknowledged that he read the document before signing.

40. Defendant denies that he was fully aware of the effects of the provisions of the Settlement Agreement.

## CONCLUSIONS OF LAW

**I. Spousal Support**

1. Guam law provides the Court with the authority to modify an award of spousal support in actions for dissolution of marriage. *See* 19 G.C.A. § 8405 (a court "may, from time to time, modify" an order regarding family support).

2. An award of spousal support "may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or

---

[6] In March 2017, Defendant agreed he could pay $200.00 in spousal support temporarily during the pendency of this matter.

[7] The Court did not include Defendant's clothing expense which appeared once in January 2017 and totaled $275.00. Defendant testified that he receives a clothing entitlement from the military of $350.48 once a year.

*Krisel v. Krisel*
Case No. DM0480-15
Findings of Fact and Conclusions of Law

orders may be varied, altered, or revoked at the discretion of the court." 19 G.C.A. § 8402(b).

3. "The provisions of an agreement for support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. An order for support of either party based on the agreement *shall* be law-imposed and *shall* be made under the power of the court to order spousal support."[8] 19 G.C.A. § 6111(b). Additionally:

> (d)    (1) *Except* as provided in Subsections (2) and (3), the provisions of an agreement for the support of either party are subject to subsequent modification or termination by court order.
>
> (2) An agreement may *not* be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate.
>
> (3) An agreement for spousal support may *not* be modified or revoked to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is *not* subject to modification or termination.[9]

19 G.C.A. § 6111(d).

---

[8] Public Law 33-26 recently amended the law regarding modification of spousal support. *See* 19 G.C.A. § 6111. The amended sections provide the Court with significant and considerable latitude in modifying spousal support as agreed to by parties to a settlement agreement entered into after May 2015. The amendments to 19 G.C.A. § 6111 through Public Law 33-26 were intended to "update current Guam codes to reflect more reasonable laws pertaining to the subjects of personal relations and community property" as it was "based on decades-old California case law, which has since been updated in California and other jurisdictions." (Guam Publ. L. 33-26 (May 7, 2015)). Accordingly, as the parties' Settlement Agreement was entered into after May 2015, the Court finds that 19 G.C.A. § 6111 applies, and that it is unnecessary to examine the Settlement Agreement under *Lam v. Lam*, 2015 Guam 6.

[9] This language mirrors California's Family Code section 3651:

> (d) An order for spousal support may not be modified or terminated to the extent that a written agreement, or, if there is no written agreement, an oral agreement entered into in open court between the parties, specifically provides that the spousal support is not subject to modification or termination.

Cal. Fam. Code § 3651.

---

*Krisel v. Krisel*
Case No. DM0480-15
Findings of Fact and Conclusions of Law

4. In this case, the Settlement Agreement clearly states that the payment of spousal support is intended to be a non-modifiable obligation. *See* Settlement Agreement at 9 ¶ 15 ("This provision for payments of spousal support is intended to be a contractual and non-modifiable obligation, both to duration and as to the amount. The obligation shall not be subject to modification by any order or judgment of any court, and neither party shall request modification at any time under any circumstances to any court.").

5. "The effect of an agreement that one spouse will pay spousal support for a finite period is to tell each spouse that the supported spouse has a specified period of time to become self-supporting, after which the obligation of the supporting spouse will cease." *In re Marriage of Minkin*, 218 Cal. Rptr. 3d 407, 423 (Cal. Ct. App. 2017), *as modified* (May 19, 2017) (internal quotation marks and alterations omitted).

6. "Although an agreement making spousal support nonmodifiable by the court is not contrary to public policy, . . . the public interest is best served when support awards reflect changes in need or ability to pay." *In re Marriage of Hufford*, 199 Cal. Rptr. 726, 728 (Cal.App. 1984).

7. In this case, the Settlement Agreement provides for spousal support to be paid over a period of sixty months or five years.

8. Defendant requests modification because he can no longer afford to pay spousal supports in the amount of $2,000.00 a month. There is no change in Plaintiff's need for spousal support at this time.

9. The Court finds that Defendant's ability to pay $2,000.00 per month in spousal support has diminished, and that based on his current finances he is unable to continue paying that amount.

10. The Court, however, will not disturb the total amount that Plaintiff and Defendant agreed to in the Settlement Agreement. Anticipated payments of $2,000 per month for a period of sixty months would total $120,000.

11. The Court notes that some of Defendant's monthly expenses are unreasonable, such as spending $1,270 a month on food for one person, and it was not clear from Defendant's testimony what the $492 loan payment is used for and when it actually began.

12. Considering Defendant's remaining financial obligations, the Court at this time will reduce the monthly payments from $2,000 per month to $1,300 per month. These payments will continue monthly until the total amount of spousal support paid reaches $120,000, the original anticipated amount. Defendant is ordered to pay $1,300 per month in spousal support on the first of each month, commencing in May 2018.

## II. Child Support

13. Defendant also moves the Court for prospective modification of child support because "it was not based on the Child Support Guidelines." (Mot. Modify at 6). However, Defendant also acknowledges that initial child support calculations based on current pay prior to the divorce came to the amount of $1,665. *See* Decl. of Clifton Demond Krisel at 2, Nov. 30, 2017). Defendant also indicates that the child support guidelines worksheet used to calculate child support included an additional $1,000.00 in the calculation for child care under the Necessary Monthly Expenses on line 15.

14. Although Defendant has informed the Court that he "will soon be rotating as to [his] location of assignment and when that occurs, [he] will lose the OHA, COLA and [his] other entitlements will be reduced unless [he is] assigned to another overseas duty station," the Court notes that this is something that may happen in the future and is not occurring at this time. *See* Decl. of Demond Krisel at 2, Jul. 13, 2017.

15. Plaintiff requests that the child support amounts remain the same as agreed to in the Settlement Agreement.

16. Plaintiff testified that the Guam Child Support Guidelines were used to calculate the child support amount. In her supplemental declaration filed November 22, 2017,

Plaintiff further provides that the child support amount was based on Defendant's expected income of $8,600.00 per month, resulting in $1,685.00 in child support. (Decl. of Stacey Yvette Krisel, Nov. 22, 2017). Plaintiff also provides that an additional $1,000.00 (or $500.00 / child) was added to the child support amount for private school. *Id.*

17. In any child support action, the Guam Child Support Guidelines shall be used. 19 G.A.R. § 1202(c)(1)).

18. "While contract principles are applied to settlement agreements, courts are unanimous in concluding that parents cannot by agreement limit or divest a court of its discretion in setting child support. A child's right to support from his or her parents is a right belonging to the child, and cannot be contracted away by his or her parents. Moreover, the primary purpose of the court in setting child support is to protect the welfare of children." *Guerrero v. Moylan*, 2002 Guam 18 ¶ 23.

19. "The Guam Child Support Guidelines purpose of promoting uniform and accurate awards and its presumption of correctness is based on the premise that the child support guidelines give courts clear economic information in determining fair and adequate child support awards." *Richardson v. Richardson*, 2010 Guam 14 ¶ 20.

20. "The adoption of [the child support] guidelines cannot, by itself, be the sole basis for a request for a modification of an existing child support order." 19 G.A.R. § 1209.

21. "The provisions of any order respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of a substantial and material change of circumstances." 5 G.C.A. § 34121. *See also Guerrero v. Moylan*, 2002 Guam 18 ¶ 45 ("Modification of a child support order may take effect any time after the filing of the motion to modify.").

22. "Inability to provide support or need for increased support because of unreasonable obligations voluntarily incurred shall not constitute a showing of substantial and material change in circumstances." 5 G.C.A. § 34121.

23. "For the purposes of child support, substantial or material change in circumstances is defined as an increase or decrease in one (1) parent's salary which results in an increase or decrease between the old child support amount and the new child support amount by at least ten percent (10%) for a period of six (6) months." 5 G.C.A. § 34118(f).

24. At this time, the Court does not find that a substantial or material change in circumstances has occurred pursuant to 5 G.C.A. § 34118(f). The Court notes, however, that Guam law also provides that "[e]ither parent may petition . . . not more than once every three (3) years for review and adjustment of the child support order without having to show a change in circumstances." *See id.*

25. Therefore, the Court will revisit the issue of child support in November 2018, three years after the initial child support order. Should either party petition the Court for review and adjustment of the child support order, the Court will order both parties to submit a completed "Worksheet 'A' For Child Support Amount Sole Custody," Appendix A to 19 Guam administrative Rules, Article 2, Child Support Guidelines.

26. When calculating child support pursuant to the guidelines, the Court reminds the parties of the following:

   a. Gross income includes income from any source such as income from salaries, wages, commissions, bonuses, spousal maintenance received, and basic and variable allowances for housing and subsistence from military pay and benefits including but not limited to basic allowance for housing (BAH), basic allowance for subsistence (BAS), basic allowance for quarters (BAQ), specialty and proficiency pay, war-zone allowance, hazardous duty, and any other entitlements reflected in monthly leave and earnings statement (LES), such as the cost-of-living allowance (COLA) for those in high cost areas and other allowances. *See* 19 G.A.R. § 1203(1). "Spousal maintenance . . . shall be deducted from the gross income of the payor." 19 G.A.R. 1203(6)(b)(2).

b. A plain reading of regulations 1203(e) and (f) together provides that private school tuition is included in the "Total Child Support Obligation," which is then divided between the parents in proportion to their adjusted gross incomes. *See* 19 G.A.R. §§ 1203(e) and (f). *See also Richardson*, 2010 Guam 14 ¶ 55.

c. Additionally, "[i]n calculating gross income for purposes of child support, a court *may* attribute or impute income to a parent up to full earning capacity if the parent is unemployed or underemployed and that parent's earnings are reduced as a matter of choice and not for reasonable cause." *Richardson v. Richardson*, 2010 Guam 14 ¶ 27 (emphasis in original).

**ORDER[10]**

IT IS HEREBY ORDERED that Defendant is to pay $1,300 per month in spousal support commencing on the first of the month commencing in May. The Court will not disturb the $2,665 per month in child support at this time. Should Defendant seek to modify that amount, he may petition the Court in November 2018 pursuant to 5 G.C.A. § 34118(f).

**IT IS SO ORDERED** this 30th day of March, 2018.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam



---

[10] If any of the foregoing findings of fact constitute conclusions of law, they are adopted as such; and if any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

---

*Krisel v. Krisel*
Case No. DM0480-15
Findings of Fact and Conclusions of Law